Filed 8/13/15 Peters v. Wells Fargo Bank CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| MARTHA JO PETERS, | |
| Plaintiff and Appellant, | E056413 |
| v. | (Super.Ct.No. RIC1100708) |
| WELLS FARGO BANK, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Judge. Affirmed.

Martha Jo Peters, in pro. per., for Plaintiff and Appellant.

Anglin Flewelling Rasmussen Campbell & Trytten, Robert Collings Little, Robin C. Campbell, and Robert A. Bailey for Defendant and Respondent.

## I. INTRODUCTION

In 2007, plaintiff and appellant Martha Jo Peters borrowed money from World Savings Bank, FSB (World Savings). The loan was secured by a deed of trust against

1

Peters's home. Peters defaulted on the loan and, after World Savings changed its name to Wachovia Mortgage, FSB (Wachovia), Wachovia began foreclosure proceedings. Peters stopped the foreclosure when she filed a bankruptcy petition. Defendant and respondent Wells Fargo Bank, N.A. (Wells Fargo) or Wachovia filed a motion for relief from the automatic stay to proceed with the foreclosure. Wachovia, or perhaps Wells Fargo, was granted relief from the stay to proceed with foreclosure. The property was eventually sold at a trustee's sale to Wachovia. After Wachovia merged into Wells Fargo, Wells Fargo sold the property to a third party in November 2009.

In January 2011, Peters commenced this action against Wells Fargo, seeking damages related to the foreclosure sale of her home. In amended pleadings, she alleged violations of the federal Real Estate Settlement Procedures Act (RESPA) (12 U.S.C.A. § 2601 et seq.), the Truth in Lending Act (TILA) (15 U.S.C.A. § 1601 et seq.), and the automatic bankruptcy stay (11 U.S.C.A. § 362(k)). After each of three successful demurrers, Peters was granted leave to amend. After Peters filed her third amended complaint (the TAC), Wells Fargo again demurred. The trial court sustained the demurrer and denied Peters leave to amend. After the entry of judgment, Peters appealed.

For the reasons given below, we affirm the judgment.

2

## II. FACTUAL AND PROCEDURAL SUMMARY

A. *First Three Pleadings and Demurrers*

In January 2011, Peters filed her original complaint, in propria persona, for "fraud" and "unfair/deceptive business practice." She alleged that after experiencing devastating losses in the stock market, she refinanced her home with the help of a loan agent who overstated her income. She could not make the payments on her loan and filed for bankruptcy protection. The original lender was taken over by one bank, which was later taken over by Wells Fargo. Wells Fargo foreclosed on her home. Although her original loan was for $176,000, Wells Fargo reported an uncollected debt of $250,000 to credit reporting agencies. She stated she was "challenging Wells Fargo's ownership of the loan."

Wells Fargo successfully demurred to the original complaint, and Peters was given leave to amend.

In her first amended complaint (FAC), Peters added a claim for violation of RESPA and TILA. She reasserted her "fraud & unfair business practices" claim and alleged that Wells Fargo failed to notify her of a class action lawsuit.

Wells Fargo demurred to each cause of action in the FAC. The demurrer was sustained. As to the RESPA and TILA claims, the demurrer was sustained without leave to amend based on statutes of limitations. Peters was granted leave to amend her other claims.

3

In her second amended complaint (SAC), Peters alleged claims for fraud, violation of the automatic stay in her bankruptcy proceeding, and lack of standing to foreclose. The primary basis for each claim was that Wells Fargo "intervened" in her bankruptcy case by claiming to be a creditor when it "had no standing to claim itself as a creditor" and by filing a motion for relief from the automatic stay. Finally, she alleges that Wells Fargo's "wrongful lifting of the automatic stay" and the foreclosure sale of her home had the effect of excluding her as a class member in a class action lawsuit against Wells Fargo.

Wells Fargo again demurred. The demurrer was supported with a request for judicial notice of documents that included a copy of the docket sheet in Peters's bankruptcy case, a motion for relief from the automatic stay filed by Wachovia in Peters's bankruptcy case on August 22, 2008, and an order by the bankruptcy court dated October 1, 2008, granting Wachovia's motion for relief from stay. The court granted Wells Fargo's request for judicial notice and sustained the demurrer; Peters was granted leave to amend to allege claims "against Wells Fargo Bank that are not based on any allegation that Wells Fargo improperly intervened in [Peters's] bankruptcy case, improperly foreclosed on her property or violated any automatic stay."

B. *The TAC*

Peters filed her TAC in December 2011. In the TAC, Peters alleged claims for: (1) fraud; (2) failure to accept or offer loan modifications under Civil Code section

4

2923.6;[1] (3) failure to record assignments of the deed of trust in violation of section 2932.5; (4) violation of the automatic stay in her bankruptcy case;[2] and (5) "fraud upon the court: false interpretation of judicial notice." (Capitalization, bolding & underlining omitted.) The fraud cause of action is based upon allegedly false statements by Wells Fargo "related to its alleged interest in [Peters's] property and to its intervention into [Peters's] bankruptcy."

Peters alleges the following background facts. Peters applied for a loan from Indy Mac Bank. The loan agent told Peters he would report her income as $200,000, even though the agent knew plaintiff did not have such income. The loan was to be secured by her residence. An appraiser indicated to Peters that he would appraise her home for an amount considerably higher than its actual value to ensure that Peters's loan would be approved for the amount she wanted.

The loan she obtained was made by World Savings in October 2007. Peters alleged she was not aware that the loan provided for negative amortization, allowing the

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] This fourth claim is titled: "THE COURT'S IMPROPER GRANTING OF DEFENDANT'S JUDICIAL NOTICE MUST BE CHALLENGED AND REMOVED; WELLS FARGO'S CONTENTION THAT IT DID NOT VIOLATE FEDERAL BANKRUPTCY STATUTE 11 USC 362(A) IS FALSE, AS THE BANKRUPTCY DOCKET NOTES THEIR INTERVENTION." (Bolding and underlining omitted.) Under this heading, Peters asserts that the court should not have granted Wells Fargo's request for judicial notice that supported the demurrer to the SAC. Ultimately, however, it appears to be an attempt to reassert her claim that Wells Fargo violated the automatic stay.

balance to increase even as payments were made, and was thus "of a predatory nature." The interest rate was also higher than she had been originally told.

Her loan was subsequently transferred "from bank to bank" without documentation. Six to nine months after obtaining the loan, Peters was in default. She made efforts to seek a modification with World Savings and Wachovia, but each "refused any assistance at all [and] demanded payment in full of the in arrears amount." "In distress," Peters filed for bankruptcy. Wells Fargo "intervened" in her bankruptcy case and obtained relief from the automatic stay to sell, and did sell, her residence at a foreclosure sale. Her indebtedness at the time was $176,000, and the house was sold for $66,000.

Additional allegations will be discussed below where relevant.

Wells Fargo demurred to each cause of action on various grounds, including the failure to state a claim upon which relief can be granted, and filed a motion to strike certain portions of, and attachments to, the TAC. It supported the demurrer with a request for judicial notice of various documents, which we discuss below.

Following a hearing, the court sustained the demurrers without leave to amend, and ruled that the motion to strike was moot. It did not explicitly rule on the request for judicial notice.

### III. DISCUSSION

A. *Requests for Judicial Notice*

As a threshold matter, we address (1) Peters's request for judicial notice filed in this court and (2) her challenge to Wells Fargo's requests for judicial notice below.

Under section 459 of the Evidence Code, reviewing courts have both a mandatory duty and a discretionary power to take judicial notice. (Evid. Code, § 459.) We are required to take judicial notice of any matter the trial court has properly judicially noticed or should have judicially noticed. (Evid. Code, § 459, subd. (a).) Among the matters that may be judicially noticed are: "Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States"; "Records of (1) any court of this state or (2) any court of record of the United States"; and "Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subds. (c), (d), (h).)

#### 1. Peters's Request for Judicial Notice on Appeal

Peters requests we take judicial notice of certain matters on appeal that had not been presented to the court below.[3] Wells Fargo opposes the request. The items specified by Peters appear to consist of someone's excerpts or summaries of articles or

---

[3] Peters titled her request: "Judicial notice: Predatory loan and securitization of loan by World Savings Bank prior to the loan being assumed by Wachovia or Wells Fargo, thus no ownership of the loan by either Wachovia or Wells Fargo and no right to foreclosure action." (Capitalization omitted.) It does not appear from our record that Peters filed any request in the trial court for judicial notice.

other matter obtained from Internet Web sites. Copies of the material itself are not provided as required. (See Cal. Rules of Court, rule 8.252(a)(3).) More importantly, none of the items appear to come within any of the categories of judicially noticeable matter set forth in Evidence Code section 451 or 452. Indeed, Peters does not specify which provision she is relying upon for her request. We therefore deny the request and decline to take judicial notice of the requested matter.

2. Wells Fargo's Requests for Judicial Notice

Wells Fargo requested judicial notice of certain documents in support of its demurrers. Relevant here are its requests for judicial notice of the following: (1) an adjustable rate mortgage note dated October 18, 2007, ostensibly signed by Peters; (2) a copy of a certain deed of trust dated October 18, 2007 (the Deed of Trust), recorded in the official records of Riverside County, signed by Peters as borrower and identifying World Savings as the lender and beneficiary, and Golden West Savings Association Service Co., as trustee; (3) documents obtained from the Office of Thrift Supervision (OTS), Federal Deposit Insurance Corporation (FDIC), and Comptroller of the Currency Administrator of National Banks, evidencing the change of World Savings's name to Wachovia on December 31, 2007, and the merger of Wachovia into Wells Fargo on November 1, 2009; (4) a notice of default and election to sell under the Deed of Trust, recorded in the official records of Riverside County on May 2, 2008; (5) a substitution of trustee of the Deed of Trust, recorded in the official records of Riverside County; (6) a notice of trustee's sale pertaining to the Deed of Trust, recorded in the official records of

8

Riverside County; (7) a trustee's deed upon sale, dated September 17, 2009, recorded in the official records of Riverside County, by which the substituted trustee under the Deed of Trust granted Peters's property to Wachovia; (8) a grant deed from "Wells Fargo Bank, N.A., Successor by Merger with Wachovia Mortgage, FSB," to Summerhomes, LLC, on November 23, 2009, recorded in the official records of Riverside County; (9) a copy of the docket sheet in Peters's bankruptcy case; (10) a motion for relief from the automatic stay filed by Wachovia in Peters's bankruptcy case on August 22, 2008; and (11) an order by the bankruptcy court dated October 1, 2008, granting Wachovia's motion for relief from stay.

Initially, we observe that Peters's arguments concerning Wells Fargo's request for judicial notice are directed at the trial court's reliance on the bankruptcy court filings and docket sheet. She does not appear to challenge the taking of judicial notice of any other particular document or fact. Moreover, regarding the bankruptcy court docket sheet, Peters appears to be concerned with the court's *interpretation* of entries in the docket, not the accuracy of the entries. Indeed, she attached the docket sheet to her TAC and relies heavily on the docket sheet for her argument that Wells Fargo wrongfully intervened in her bankruptcy case.

Regarding the propriety of judicial notice of the matters requested by Wells Fargo, we begin with the case Peters cites: *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366. In that case, the court stated: "'Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular

9

interpretation of its meaning.' [Citation.] While courts take judicial notice of public records, they do not take notice of the truth of matters stated therein. [Citation.] 'When judicial notice is taken of a document, . . . the truthfulness and proper interpretation of the document are disputable.' [Citation.] [¶] . . . '[T]he fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. [Citation.] . . .' [Citation.]" (*Id.* at p. 1375.)

In *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 (*Fontenot*), the court considered *Herrera* and other decisions and concluded that "a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Fontenot*, *supra*, at p. 265.) In *Fontenot*, the court held that it could take judicial notice of the fact that a particular party was the beneficiary under a deed of trust "because, as a legally operative document, the deed of trust designated [the party] as the beneficiary. Given this designation, [the party's] status was not reasonably subject to dispute." (*Id.* at p. 266.)

*Fontenot* was followed in *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743. In that case, the plaintiff sued JPMorgan Chase Bank, N.A. (JPMorgan), among others, arising from an allegedly fraudulent loan and wrongful

10

foreclosure. As to JPMorgan, the plaintiff alleged the bank did not have standing to foreclose the deed of trust on his property. (*Id.* at p. 746.) In support of its demurrer, JPMorgan submitted a copy of the plaintiff's deed of trust on the subject property, a copy of an assignment of the deed of trust to Washington Mutual Bank (WaMu), an order by the OTS appointing the FDIC as the receiver of WaMu, the terms of a purchase and assumption (P&A) agreement between the FDIC and JPMorgan that was available on the FDIC's Web site, and other documents evidencing the nonjudicial foreclosure sale of the subject property. (*Id.* at p. 747.) Under the P&A agreement, the assets, but not the liabilities, of WaMu were transferred to JPMorgan. (*Id.* at p. 752.) On appeal, the plaintiff argued that the court should not have taken judicial notice of the P&A agreement or the facts therein. (*Ibid.*) The Court of Appeal rejected the argument, explaining that the facts regarding the transfer of assets, but not the liabilities, of WaMu to JPMorgan "derive from the legal effect of the [P&A agreement and the OTS order] themselves, rather than any disputed hearsay statement of fact within them." (*Id.* at p. 755.) The grant of judicial notice, therefore, was not an abuse of discretion. (*Ibid.*)

Applying these principles here, we conclude that we may, and do, take judicial notice of legally operative facts in the documents recorded in the official records of Riverside County: the Deed of Trust and documents pertaining to the trustee's sale, the dates of the recording of those documents, and the legally operative designations of the parties, such as the trustee, beneficiary, and borrower. (See *Fontenot*, *supra*, 198 Cal.App.4th at pp. 265-266; Evid. Code, § 452, subds. (c), (h).)

11

We also take judicial notice of the bankruptcy court docket sheet in Peters's bankruptcy case, the motion filed by Wachovia for relief from the automatic stay, and the bankruptcy court's order granting that motion. (Evid. Code, § 452, subds. (d), (h).) Regarding the docket sheet, we note that Peters attached that document to her TAC and relies on it to support her arguments that Wells Fargo violated the automatic stay.

Regarding the documents submitted from the OTS, the FDIC, and the Comptroller of the Currency, key portions of these documents appear to have been marked or redacted in the copies included within the clerk's transcript on appeal. Such portions are unreadable. We do, however, take judicial notice of the dates on which World Savings changed its name to Wachovia, and Wachovia subsequently merged into Wells Fargo by reference to the Web site for the FDIC. (See Evid. Code, § 452, subd. (h); *Scott v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 761 [court may take judicial notice of matter published to the public on the official FDIC Web site and not reasonably subject to dispute].) These dates are, respectively, December 31, 2007, and November 1, 2009.

Finally, we agree with Peters that we cannot take judicial notice of the adjustable rate mortgage note proffered by Wells Fargo. It is not recorded in the official records of any government entity and its authenticity is disputed by Peters. Rejecting judicial notice of this document, however, has little bearing on our analysis. Peters alleges, and does not

12

dispute on appeal, that she took out a loan from World Savings in October 2007;[4] she merely disputes that the loan document Wells Fargo has presented is the one she signed.

B. *Standard of Review on Demurrer*

A demurrer is used to test the sufficiency of the factual allegations of the complaint to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The facts pled are assumed to be true and the only issue is whether they are legally sufficient to state a cause of action. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

---

[4] In her opening brief on appeal, Peters states that although the loan was arranged by an Indy Mac Bank loan agent, it was "apparently financed . . . through World Savings Bank. World Savings Bank then changed its name to Wachovia Mortgage." She further states that the loan was made, and her funds received, in October 2007.

C. *RESPA and TILA*

In her FAC, Peters alleged that Wells Fargo (or its predecessors) violated RESPA and TILA. Wells Fargo demurred to these claims based on statutes of limitations. The trial court sustained the demurrer without leave to amend. Because we conclude that any claim Peters might have for a violation of RESPA or TILA is barred by statutes of limitations, we affirm the court's ruling.

RESPA is a federal law enacted "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [real estate] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." (12 U.S.C.A. § 2601(a).) The law requires, regulates, or prohibits a variety of conduct by lenders and loan servicers. Among other requirements, lenders must provide to loan applicants certain information and a good faith estimate of charges of real estate settlement services (*id.*, § 2604(c), (d)), and disclose whether the servicing of the loan may be assigned, sold, or transferred to another (*id.*, § 2605(a)). Loan servicers must notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan (*id.*, § 2605(b)), and respond to certain requests from a borrower within 30 days (*id.*, § 2605(c)). RESPA also prohibits some referral fees and kickbacks. (*Id.*, § 2607.)

RESPA provides for a private right of action for actual damages caused by violations of its provisions, plus additional damages "in the case of a pattern or practice of noncompliance . . . ." (12 U.S.C.A. § 2605(f)(1)(B).) To state a claim under RESPA,

14

courts have required plaintiffs to allege specific facts to show causation of actual, pecuniary damages as a result of the failure to comply with the statute.  (See, e.g., *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 531-532; *Tamburri v. Suntrust Mortg., Inc.* (N.D.Cal. 2012) 875 F.Supp.2d 1009, 1014-1015; *Allen v. United Financial Mortg. Corp.* (N.D.Cal. 2009) 660 F.Supp.2d 1089, 1097.)

A cause of action for violation of RESPA's notice and disclosure requirements must be brought within three years "from the date of the occurrence of the violation."[5] (12 U.S.C.A. § 2614.)  The date of the occurrence is ordinarily the date the transaction closed (*Snow v. First American Title Ins. Co.* (5th Cir. 2003) 332 F.3d 356, 359; *Jensen v. Quality Loan Serv. Corp.* (E.D.Cal. 2010) 702 F.Supp.2d 1183, 1195), or the date the disclosures should have been made (*Moore v. Mortgage Elec. Registration Systems* (D.N.H. 2012) 848 F.Supp.2d 107, 120).  It is not, as Peters contends, the date of the foreclosure sale.

TILA was enacted "'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'"  (*Beach v. Ocwen Federal Bank* (1998) 523 U.S. 410, 412, quoting 15 U.S.C.A. § 1601(a).)  Among other requirements, TILA requires that, in the case of a loan secured by the borrower's principal residence,

---

[5]  A one-year statute of limitations applies to claims based on the violation of RESPA's prohibition of kickbacks and restrictions on deposits in escrow accounts.  (12 U.S.C.A. §§ 2607, 2614.)

15

the lender shall provide the borrower with notice that the borrower may rescind the loan transaction within three business days after the closing of the transaction. (15 U.S.C.A. § 1635(a).) If the lender does not provide the required notice, the borrower has up to three years to rescind the transaction. (*Id.*, § 1635(f).) If the borrower does not notify the lender of his or her intent to rescind within that time, the right of rescission expires. (*Ibid.*; see *Jesinoski v. Countrywide Home Loans, Inc.* (2015) __ U.S. __ [135 S.Ct. 790, 2015 U.S. LEXIS 607, at p. *4].)

TILA expressly provides for a private right of action to recover damages for violating its provisions. (15 U.S.C.A. § 1640(a).) The statute of limitations for such actions is one year from the date of the occurrence of the violation. (*Id.*, § 1640(e).) This is usually the date the loan documents are signed. (*Meyer v. Ameriquest Mortg. Co.* (9th Cir. 2003) 342 F.3d 899, 902; *Altman v. PNC Mortg.* (E.D.Cal. 2012) 850 F.Supp.2d 1057, 1082.)

Regarding her RESPA and TILA claims, Peters alleged that although she "signed some papers," "none of them revealed the real terms," and she did not "see what the payments would actually be." She further alleged that documents Wells Fargo subsequently provided had not been previously seen by her and a signature on one document "looks different from [her] usual signature" and states "it is questionable whether that signature page was connected to the pages it is made to appear it was confirming." In an attachment to the FAC, Peters provides a "personal history" in which she states that she "first saw the terms of the loan" when escrow for the loan closed, and

16

was surprised at that time to see that the loan provided for "varied payments, what now has been called 'pick a payment' provisions, and that the interest rate was quite high." In her opening brief on appeal, she asserts that she did not receive copies of the right to rescind required by TILA. She concedes, however, that she had not sought to rescind the transaction.[6]

It is clear from Peters's allegations that any violations of RESPA or TILA occurred when her loan transaction closed before the end of 2007. Her right to rescind the transaction under TILA thus expired, at the latest, by the end of 2010, before she filed her original complaint. (See *Lane v. Vitek Real Estate Indus. Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1100 [TILA rescission action barred when complaint filed more than three years after loan closed].) For the same reason, her claims for damages arising under RESPA or TILA were not made within the applicable one-year or three-year statutes of limitations.

Peters argues that the limitations periods are equitably tolled because she did not discover the alleged violations until she learned of news reports about state and federal actions against Wells Fargo and other lenders.

"Equitable tolling 'halts the running of the limitations period so long as the plaintiff uses reasonable care and diligence in attempting to learn the facts that would

---

[6] In her reply brief on appeal, Peters states that she "does not see how [rescission] can be done without causing harm to those who have already taken the property and put money and effort into it. Therefore she seeks damages in another form, presumably a monetary recovery . . . ."

17

disclose the defendant's fraud or other misconduct.' [Citation.]" (*Sagehorn v. Engle* (2006) 141 Cal.App.4th 452, 460; see also *Cervantes v. Countrywide Home Loans, Inc.* (9th Cir. 2011) 656 F.3d 1034, 1045 [equitable tolling applies "'in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim.'"].) "'To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts. [Citations.]' [Citation.]" (*Sagehorn v. Engle*, *supra*, at pp. 460-461.)

If, as here, "'on the face of the complaint the action appears barred by the statute of limitations, plaintiff has an obligation to anticipate the [statute of limitations] defense and plead facts to negative the bar.'" (*Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 25.) This means that the plaintiff must put forth allegations that establish the existence "of the elements necessary for application of the doctrine of equitable tolling . . . ." (*Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 407.) "'Absent such allegations, the complaint is subject to demurrer . . . .'" (*Gentry v. EBay, Inc.* (2002) 99 Cal.App.4th 816, 824.)

Peters does not allege, and does not indicate that she could allege, that Wells Fargo (or its predecessors) fraudulently concealed any operative facts or that she could not have discovered, with due diligence, the operative facts within the limitations period.

18

Because Peters did not timely assert her RESPA and TILA claims or adequately allege facts supporting equitable tolling, the demurrer as to those claims was properly sustained.

D. *Violation of the Automatic Stay in Peters's Bankruptcy Case*

In her SAC, Peters alleged that Wells Fargo violated the automatic stay in her bankruptcy case. In particular, she alleged that, "[u]nder the guise of being a creditor, Wells Fargo took away the automatic stay protection normally a vital component of a bankruptcy." Its "intervention without right was done without notice to [Peters] and resulted in not only the wrongful foreclosure but also the exclusion of [her] from a class action suit against Wachovia . . . ."

Wells Fargo demurred to this claim on the ground that the bankruptcy court had exclusive jurisdiction over the claim. It supported the demurrer with the bankruptcy docket sheet, Wachovia's motion for relief from the automatic stay, and the bankruptcy court's order granting Wachovia's motion included in its request for judicial notice. In sustaining the demurrer, the court granted Peters leave to amend to allege claims "against Wells Fargo Bank that are *not based on any allegation that Wells Fargo improperly intervened in [Peters's] bankruptcy case, improperly foreclosed on her property or violated any automatic stay*." (Italics added.)

In her TAC, Peters indirectly reasserted her claim for violation of the automatic stay by pointing to the bankruptcy court's docket sheet as evidence that "Wells Fargo did in fact intervene with her bankruptcy by declaring to the trustee of bankruptcy that it was a creditor of [Peters]; by petitioning for relief from the automatic stay; and by being

19

granted relief from the stay." Regardless of whether Wells Fargo actually foreclosed, she continues, "the facts reveal that it did in fact interfere with [Peters's] bankruptcy when it had no standing as a real party in interest to do so."

On appeal, Peters contends that the trial court "fail[ed] to question the entries of Wells Fargo's intervention into [her] bankruptcy." (Capitalization & bolding omitted.) In particular, Peters points to entries made in the bankruptcy court's docket sheet that refer to a motion for relief from stay filed by Wells Fargo. The first of these entries, dated August 22, 2008, refers to a motion filed by Wells Fargo, but is followed by this note: "CORRECTION: The correct Movant is Wachovia Mortgage, FSB." Another entry with the same date indicates that a request for special notice was filed "by Creditor Wells Fargo Bank, NA." A third entry, dated August 27, 2008, stated that a hearing had been set on a motion for relief from stay "filed by Creditor Wells Fargo Bank, NA." A fourth entry refers to a hearing held on September 18, 2008, at which a motion for relief from stay "filed by Creditor Wells Fargo Bank, NA" was granted. The dates of these entries was more than one year before Wachovia merged into Wells Fargo.

Viewing Peters's allegations and the docket sheet in a light most favorable to Peters, the referenced docket entries arguably indicate that at a time when Wells Fargo was not a creditor of Peters and appeared to have no legal interest in Peters's debt or the Deed of Trust, Wells Fargo filed a motion for relief from stay to foreclose, a hearing was held, and the motion was granted. Even in that favorable light—and regardless of

20

whether Peters has alleged sufficient facts to state the elements of a claim for violation of the automatic stay—any such claim cannot be maintained in state court.

The automatic stay arises under section 362 of the United States Bankruptcy Code. The stay "is self-executing, effective upon the filing of the bankruptcy petition." (*In re Gruntz* (9th Cir. 2000) 202 F.3d 1074, 1081, citing 11 U.S.C.A. § 362(a).) The Bankruptcy Code also provides a remedy for a willful violation of the automatic stay. (See 11 U.S.C.A. § 362(k).)[7] Jurisdiction over such claims is exclusively in the bankruptcy court where the debtor's bankruptcy case commenced (*Cline v. First Nationwide Mortg. Corp. (In re Cline)* (Bankr. W.D.Wash. 2002) 282 B.R. 686, 696); *Pereira v. First North Am. Nat'l Bank* (Bankr. N.D.Ga. 1998) 223 B.R. 28, 31-32), and state court actions alleging violations of the automatic stay or other misuse of bankruptcy proceedings are preempted (see, e.g., *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 [state court claim that defendant fraudulently obtained relief from automatic stay in plaintiff's bankruptcy case was preempted by federal Bankruptcy Code]; *Saks v. Parilla, Hubbard & Militzok* (1998) 67 Cal.App.4th 565, 573-574 [action for malicious prosecution against creditors based upon defendants' adversary proceeding in plaintiff's bankruptcy case preempted by federal bankruptcy law]; *Idell v. Goodman* (1990) 224 Cal.App.3d 262, 271 [same]; *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (9th

---

[7] Title 11 United States Code Annotated section 362(k)(1) provides, in general, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

Cir. 1996) 74 F.3d 910, 915 [state law malicious prosecution action based upon creditor's claim in plaintiff's bankruptcy proceeding preempted by Bankruptcy Code]).

In light of these authorities, any claim Peters has arising out of Wells Fargo's involvement in obtaining relief from the automatic stay must be pursued, if at all, in bankruptcy court. Wells Fargo's demurrer to Peters's claims arising from alleged wrongful conduct in her bankruptcy case was correctly sustained.

E. *Fraud*

On appeal, Peters does not present any substantive argument in support of her fraud claim beyond stating that she set forth the elements of fraud in the TAC and "described the acts which constituted fraud by the Defendant." There are at least two problems with Peters's fraud allegations. First, they appear to be based primarily upon allegedly false statements and falsified documents pertaining to Wells Fargo's alleged "intervention into the Plaintiff's bankruptcy." She points to "Wells Fargo's declaration to her bankruptcy trustee that it was a 'creditor of the Plaintiff' . . . ." As discussed above, such claims are preempted by federal bankruptcy law. (See *Saks v. Parilla, Hubbard & Militzok, supra*, 67 Cal.App.4th at pp. 573-574 ["Parties may not avail themselves of state court tort remedies to circumvent federal remedies for their opponents' alleged misuse of the bankruptcy process"].)

Second, to the extent Peters alleged false statements made outside her bankruptcy case, she has failed to allege any facts showing that she relied on the false statements or how they resulted in damage—each an essential element of fraud. (See *Small v. Fritz*

22

*Companies, Inc.* (2003) 30 Cal.4th 167, 173-174.) She asserts, for example, that Wells Fargo's attorney, at an unspecified time, showed her two different loan documents, each ostensibly signed by her, when, in fact, she signed only one. Even if one of the documents is false, Peters does not explain how she relied on the false document to her detriment. Accordingly, the demurrer to her fraud claim was properly sustained.

F. *Failure to Agree to Modify Loan Under Section 2923.6*

Peters alleges that Wells Fargo or its predecessor failed to comply with section 2923.6 by refusing her requests to modify her loan and, instead, demanding she pay the entire amount in arrears. Based on the terms of section 2923.6 as it existed during the relevant time, Peters has failed to state a cause of action under that statute.

Because section 2923.6 has been amended more than once since Peters obtained her loan, we must first determine the terms of the statute during the relevant time. Peters obtained her loan before the end of 2007. She defaulted soon afterward and, in August or September 2009, the loan was foreclosed. The relevant time period as to any alleged requests to modify her loan, therefore, was from 2007 through September 2009.

In 2008, the Legislature added section 2923.6, which provided, in relevant part:

"(a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:

23

"(1)  The loan is in payment default, or payment default is reasonably foreseeable.

"(2)  Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

"(b)  It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."  (2008 Stats. ch. 69, § 3, pp. 227-228.)  The statute became effective on July 8, 2008.  (*Id.*, ch. 69, p. 223.)

In *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, the court explained that the version of section 2923.6 in effect during the relevant time "does *not* operate substantively.  Section 2923.6 merely expresses the *hope* that lenders will offer loan modifications on certain terms."  (*Id.* at p. 222, fn. omitted; see also *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1617 ["There is no 'duty' under Civil Code [former] section 2923.6 to agree to a loan modification."].)  The *Mabry* court noted "the conspicuous[] absence of any actual duties imposed on anybody in this statute.  At the most, the statute seems to offer a defense to servicers of loan pools if the servicer tries—say, over the objection of an owner of a share in the pool—to implement a loan modification rather than going straight to foreclosure."  (*Mabry v. Superior Court*, *supra*, at pp. 222-223, fn. 9.)  Because the statute created no duty on the part of a lender or loan servicer to the borrower, Peters cannot state a cause of action based upon its alleged violation.

Section 2923.6 was subsequently amended in 2009, the amendment taking effect on January 1, 2010. (2009 Stats., 1st Reg. Sess. 2009-2010, ch. 43, § 2, p. 248.) This amendment added language regarding "investors under a pooling and servicing agreement," but, for our purposes, made no substantive change to the statute. (*Ibid*.) It was amended again in 2012, this time to provide certain substantive rights in favor of borrowers, and impose corresponding duties on loan servicers, if and when a borrower applies for a loan modification.[8] (2012 Stats., 1st Reg. Sess. 2011-2012, ch 86, § 7, pp. 2303-2304.) These statutory rights and duties, however, did not arise until long after Peters could have made any request for a loan modification. The 2012 amendment does not help her.[9]

---

[8] Among the provisions added in the 2012 amendment is a new subdivision (c), which provides: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: [¶] (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired. [¶] (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer. [¶] (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification."

[9] In her reply brief, Peters includes a discussion of the Home Affordable Modification Program, a program launched by the United States Department of the Treasury in 2009 to help distressed homeowners with delinquent mortgages. (See *Corvello v. Wells Fargo Bank, N.A.* (9th Cir. 2013) 728 F.3d 878, 880.) To be eligible for the program, a borrower must submit to his or her loan servicer a "Home Affordable Modification Program Hardship Affidavit" and provide income documentation.

*[footnote continued on next page]*

G. *Peters's Question Regarding the Authority of the Commissioner of Corporations to Exempt Loan Servicers from Certain Statutory Requirements*

In her SAC, under the heading "LACK OF STANDING TO FORECLOSE," Peters pointed out that in a declaration attached to the notice of trustee's sale regarding her property a vice-president of Wachovia stated that Wachovia had obtained from the Commissioner of Corporations a temporary order of exemption pursuant to section 2923.53 and that the time frame for giving notice of sale specified in subdivision (a) of section 2923.52 does not apply.[10] Peters then alleges: "The meaning of this is not clear but should be questioned as to why or how such an exemption was necessary." Peters did not raise this issue in her TAC.

---

*[footnote continued from previous page]*
(Treasury Supplemental Directive 09-01, available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf [as of August 13, 2015].) Peters does not indicate that she submitted this affidavit or was otherwise eligible for the program.

[10] The declaration mirrors the language set forth in former section 2923.54 as it existed in 2009, which provided: "(a) A notice of sale filed pursuant to Section 2924f shall include a declaration from the mortgage loan servicer stating both of the following: [¶] (1) Whether or not the mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed. [¶] (2) Whether the timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55." The section was repealed by its terms on January 1, 2011. (Former § 2923.54, subd. (c); Stats. 2009, 2d Ex. Sess. 2009-2010, ch. 4, § 5, p. 3371.) Former section 2923.52, subdivision (b), provided for a delay in giving notice of sale under certain circumstances, and states that it does not apply if the loan servicer has obtained a temporary or final order of exemption. (Stats. 2009, 2d Ex. Sess. 2009-2010, ch. 4, § 3, p. 3369.)

In her opening brief on appeal, Peters directs our attention to the Wachovia vice-president's declaration. According to Peters, the Wachovia vice-president declared that an exemption from section 2923.5 had been obtained from the Commissioner of Corporations. She then states: "It is questionable whether the Commissioner of Corporations can effect [*sic*] any exemption from a state statute mandating that contact be made with a defaulting borrower prior to initiating a foreclosure."

The problem with Peters's argument is that the Wachovia vice-president's declaration does not refer to an exemption from the requirements of section 2923.5 (as Peters contends), but to an exemption authorized by section 2923.53 concerning the requirements of former section 2923.52.

At the time the declaration was made, section 2923.52 required a 90-day delay in giving a notice of trustee's sale "in order to allow the parties to pursue a loan modification to prevent foreclosure" under specified conditions. (Former § 2923.52, subd. (a); Stats. 2009, 2d Ex. Sess. 2009-2010, ch. 4, § 3, pp. 3368-3369.) However, that requirement does not apply if the loan servicer has obtained an order of exemption from the Commissioner of Corporations. (Former §§ 2923.52, subd. (b), 2923.53, subd. (a).) Former section 2923.53, subdivision (b), expressly authorizes the Commissioner of Corporations to issue a temporary and final order exempting loan servicers from the requirements of former section 2923.52. Thus, contrary to the suggestion raised by Peters's question, the Legislature has authorized the Commissioner of Corporations to grant the exemption referenced by the Wachovia vice-president.

H. *Alleged Violation of Section 2932.5*

In the TAC, Peters alleged that Wells Fargo failed to comply with section 2932.5. This section provides: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. *The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded*." (Italics added.)

On appeal, Peters argues that Wachovia could not exercise the power of sale in the Deed of Trust because there were no recorded assignments of the Deed of Trust from World Savings to Wachovia or from Wachovia to Wells Fargo. Therefore, she concludes, neither had the right to obtain relief from the automatic stay or to foreclose.

California courts have recently addressed and rejected similar arguments, holding that section 2932.5 applies to mortgages, not deeds of trust. (See *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1497; *Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 518; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1509 [Fourth Dist., Div. Two]; *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 122-123; see also *Stockwell v. Barnum* (1908) 7 Cal.App. 413, 416-417 [applying former § 858, predecessor to § 2932.5].) As the court in *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 336 stated: "[W]here a deed of trust is involved, the trustee may initiate foreclosure irrespective of whether an assignment of the beneficial interest is recorded." Because the power of sale in this case

was in a deed of trust, section 2932.5 has no application to the foreclosure sale in this case.

Peters relies on two decisions by the same federal bankruptcy court, which held that section 2932.5 applies to deeds of trusts: *U.S. Bank, N.A. v. Skelton (In re Salazar)* (Bankr. S.D.Cal. 2011) 448 B.R. 814, 820, reversed in *U.S. Bank, N.A. v. Salazar (In re Salazar)* (Bankr. S.D.Cal. 2012) 470 B.R. 557, and *Cruz v. Aurora Loan Servs., LLC (In re Cruz)* (Bankr. S.D.Cal. 2011) 457 B.R. 806. However, *Salazar* was not only reversed on direct appeal by the federal district court because it was contrary to California law, but rejected as "unpersuasive" in *Calvo v. HSBC Bank USA, N.A.*, *supra*, 199 Cal.App.4th at page 123, footnote 2. Other recent California cases have expressly declined to follow *Cruz*. (See, e.g., *Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at pp. 1497-1498; *Haynes v. EMC Mortgage Corp.*, *supra*, 205 Cal.App.4th at p. 335.) We have found no California case that has agreed with *Salazar* or *Cruz*.

Peters also relies on a third case, *Tamburri v. Suntrust Mortg., Inc.* (N.D.Cal. July 6, 2011, No. C-11-2899 EMC) 2011 U.S. Dist. Lexis 72202, which granted the debtor a preliminary injunction against the lender's foreclosure based, in part, on "the ambiguity in the law" regarding the interpretation of section 2932.5. (*Tamburri v. Suntrust Mortg., Inc.*, *supra*, at p. *13.) The primary basis for the ambiguity was the existence of the bankruptcy court's *Salazar* decision. (*Tamburri v. Suntrust Mortg., Inc.*, *supra*, at p. *13.) *Tamburri*, however, was decided before *Salazar* was reversed and before the more recent California decisions cited above. *Tamburri*, in short, is not persuasive authority on

29

this point. (See *Haynes v. EMC Mortgage Corp.*, *supra*, 205 Cal.App.4th at pp. 335-336 [declining to follow *Tamburri*].)

In light of the overwhelming weight of authority and the reasons expressed in the California cases, the court correctly sustained the demurrer to Peters's claim based on section 2932.5.

I. *Claims Regarding Class Action*

In Peters's SAC, she alleged that Wells Fargo's violation of the automatic stay and the foreclosure sale of her home resulted in her being excluded from a pending class action lawsuit against Wachovia. On appeal, she explains that the particular class action lawsuit identified three distinct classes: Class A borrowers, who no longer held their loan; Class B borrowers, who held their loan and were not in default; and Class C borrowers, who still held their loans and were in default. Because of Wells Fargo's wrongful action in her bankruptcy case, she is a member of Class A, not Class C. She explains further that the class action has settled and although members of each class will receive some cash as part of the settlement (including Peters), Wells Fargo is required to implement a loan modification program for Class B and Class C members.

If this claim involves any wrongful activity by Wells Fargo, it is Wells Fargo's alleged violation of the automatic stay. That violation allegedly led to the relief from the automatic stay, the foreclosure sale of her home and extinguishment of her loan, and, consequently, her relegation to Class A membership in the class action. Therefore, if

30

there is any cognizable claim arising from these facts, it is preempted by federal bankruptcy law based on the authorities discussed above.[11]

J. *Conclusion*

Peters's claims arising out of an alleged violation of the automatic stay under the Bankruptcy Code or other misuse of the bankruptcy process are preempted by federal bankruptcy law. Her fraud allegations are insufficient to state a claim for relief; even if the element of a false representation is met, she has failed to allege her justifiable reliance on any false statement or causation of damages. Nor has she indicated she could do so if given a fourth opportunity to amend. The RESPA and TILA claims are barred by statutes of limitations. Finally, Peters's allegations that Wells Fargo or its predecessors violated statutory duties or caused her to have a certain status in a class action are insufficient to state a claim upon which relief can be granted for the reasons stated above. Accordingly, we affirm the judgment.

## IV. DISPOSITION

The judgment is affirmed. Wells Fargo shall recover its costs on appeal.

---

[11] In another part of her opening brief, Peters refers to actions against Wells Fargo taken by the State of California and other states. She also describes a "Foreclosure Review Program being conducted by the Comptroller of the Currency and the federal government." She states she has submitted an application form regarding this program, "yet nothing ever came of it." She concludes by stating that "[s]he wonders why the court would not take note of this ongoing governmental action to provide relief to her and other predatory loan victims who have lost their homes to foreclosure. . . . How can this lender prevail in this court yet be held to account by the state and federal governments?" The information Peters provides and the questions she poses do not appear to be pertinent to the issues raised on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.